BANK OF HAWAII, Plaintiff

v.

MEKELI IEREMIA, Defendant

High Court of American Samoa
Trial Division

CA No. 47-88

October 24, 1988

Before REES, Chief Justice.

Counsel: For Plaintiff, Roy J.D. Hall, Jr.

On Request for "Consent Judgment":

Counsel for plaintiff submitted to the Court a proposed "consent judgment" to which the defendant, who was unrepresented by counsel, had stipulated. The judgment would have been for $5,341, said to be the amount still owing on a loan from plaintiff to defendant, plus attorney's fees in the amount of $500.00, court costs of $55, and post-judgment interest at the rate of 14.55%.

At least since 1986 the Court has been most reluctant to sign "consent judgments." This reluctance stems partly from our experience with "clerk's default judgments." Prior to its 1987 amendment Rule 55 of the Territorial Court Rules of Civil Procedure allowed the clerk to enter judgment although no judge had so much as looked at the complaint, provided that the amount sought in the complaint was fully liquidated. It was discovered, however, that some creditors were routinely filing affidavits that overstated the "principal amounts"

due on contracts, often by including as part of the "principal amount" attorney's fees for which there was no contractual or other legal basis. In other words, the summary process provided by clerk's default judgments was being used not just to save time and expense where the facts were not subject to dispute, but to recover amounts that would not have been recovered if a judge had looked at the case.

Another problem with consent judgments, at least where one party is unrepresented by counsel, is that some people will sign anything. This is especially true in Samoa. As the Court observed in Development Bank v. Ilalio, 5 A.S.R.2d 110 (1987):

> Courts and commentators in the United States have long remarked the ease with which people can be induced to sign adhesion contracts containing the most draconian kinds of provisions, including waivers of important substantive and procedural rights in the event of litigation. This phenomenon is particularly pronounced among people in the lower economic strata; indeed, it is the phenomenon that gave rise to the doctrine of unconscionability and other mitigating devices. It is particularly strong in this Territory.
>
> In the Samoan culture it is considered somewhat impolite to refuse almost any request, including a request to give away large amounts of money or other property. Avoidance of immediate conflict, with the possibility that real agreement can be reached at some time in the future, is greatly preferred to a direct refusal. This is especially true when a request is made by someone with a claim to superior social status or to official authority.
>
> A related phenomenon is an unusually strong desire to avoid courts, which are authoritative and powerful yet mysterious, untraditional, and somewhat foreign. A threatened lawsuit therefore has a far more vivid ad terrorem effect on a person of limited means and sophistication in Samoa than it would

179

have on the reasonable person in New York. It is inconceivable that an institution doing business in the Territory could remain unaware of this for very long, and the High Court cannot ignore it either.

Id. at 127-28 n.10.

Ilalio concerned a "settlement" that had been signed by a debtor who later testified that while he had borrowed some money from the plaintiff, he had not borrowed nearly as much as he agreed to pay in the settlement. The Court gave judgment for defendant, noting that courts will not ordinarily enforce such an agreement when

(1) the party that drafted and pressed for the "settlement" is a business entity experienced in and familiar with such transactions; (2) the other party is an individual who has no such experience or familiarity and who generally signs the document without benefit of legal counsel; (3) the transaction was a whirlwind settlement in which there was no evidence that the weaker party negotiated, deliberated, or fully understood what he was giving up, and in which the stronger party employed threats or promises (usually threats or promises to do things that the stronger party had a legal right to do) to encourage a quick decision; and (4) the exchange was lopsided, consisting of the surrender of potentially valuable legal rights by the weaker party in exchange for a small sum or other trivial consideration from the stronger party.

Id. at 124-25 n.8.

Although the Court knows very little about the circumstances of the present case, it appears from the documents with which we have been presented that if the "consent judgment" now presented to us had instead been sued upon as a settlement, it would have been at least partly unenforceable. The defendant agrees to pay a $500 attorney's fee, although the documentation submitted by the Bank upon the Court's request contains no contractual provision for attorney's fees.

180

It also appears that the defendant made partial payment on the loan before suit was filed. We have no evidence of how much he paid, however, other than the bare assertion of the amount presently due. This assertion is contained in an affidavit not by an officer or employee of the plaintiff bank but by its attorney. At least in cases where there is any possibility at all that the amount due has been miscalculated, the Court should see the evidence itself (rather than the attorney's conclusion from the evidence) before rendering judgment. The usual way in which this is done is by submission of a bank ledger as an exhibit. The Court examines such ledgers in default hearings on the average of once or twice a week; it takes five or ten minutes.

That a defendant unrepresented by counsel signed something called a "consent judgment" rather than a "settlement" hardly suggests that the document should escape judicial scrutiny. When a judge signs his name to a court order he certifies that he has in fact exercised his judgment. He affirms not only that the premises of the order are true and that the order itself is lawful, but also that it is appropriate under all the circumstances that whatever the order requires should be given the force of law. Such an event should be worth a few minutes of the judge's and the attorney's time in open court.

This is not to suggest any impropriety on the part of the plaintiff. The Bank of Hawaii is a reputable institution and its attorney is a reputable attorney. Indeed, the writer of this opinion regards it as overwhelmingly likely (although he lacks the personal knowledge that would be necessary to certify) that the facts of this case are exactly as represented by counsel in his affidavit. If anything is forbidden to judges, however, it is to apply one set of rules to people we know and respect and another set to other people. Except in extraordinary circumstances not presented here, the risk that the "consent judgment" device will be abused outweighs its usefulness as a means of saving time.

If defendant is honoring the agreement that was the basis for the requested consent judgment, then perhaps plaintiff does not need a court order. If an order is needed because defendant has not

181

honored the agreement or for some other reason not reflected in the present record, plaintiff can move for a default judgment which can be had in ten days.

The request for a consent judgment is denied.